with Melendez v. Sirius XM Radio 21-1769. Good morning, Your Honor. Hold on a second. That's perfect. Thank you. OK. You can go. Good morning, Your Honors. I represent the economic John Melendez, who's also known by his stage name, Cedric John, a celebrity and former writer and audio performer for The Howard Stern Show for 16 years. He has brought a case in the Southern District on two claims, both under California's right of publicity. The main question on appeal that's briefed is basically, can a California right of publicity claim ever survive copyright preemption as it's led here? And is there a pathway for celebrities who work on shows that are themselves copyrighted to obtain compensation for the continued unauthorized use of their identity, their persona, for commercial gain? We say yes. And our personal complaint, following the guidance of Judge LaValle for this court in Jackson, we believe does just that and avoids any preemption under Section 301 of the Copyright Act. Mr. Popik, let me just see if we can agree on where the preemption line is before we get to what you pledged. So if there's a clip of an archived show, 10 seconds of a clip, and it says listen, this is on The Howard Stern Channel, and it says listen to this at 8 a.m. every day, you would agree that's preempted, right? I would think that we're not, I agree with you, Your Honor, that we're not trying to stop the playing of The Howard Stern Show or clips of The Howard Stern Show. Or an advertisement on that channel of The Howard Stern Show, right? Listen at 8 a.m. to archived, you know, with a 10-second clip including your client. That would be preempted, right? I wouldn't go that far, even under Jackson. I think that if they're playing my client's voice to advertise for that show. They can't, they have the copyright for the show and they can't advertise for it? There's no case that would suggest you can't use the copyrighted material to advertise. Cases have said the opposite, that an advertisement that includes the copyrighted material is fine. You have to be able, you know, one court said it would be illogical not to allow them to advertise the very copyrighted material they have, right? Yeah, it's how they're doing it. Well, I just gave you how they're doing it. They're just playing a clip for 10 seconds. On the show itself? Yeah, on the channel itself. Saying listen at 8 a.m. to an archived show. Yeah, I think that's okay. All right. If you do it on another channel, let's say it's a random channel and they say on channel, whatever it is, 101, at 8 a.m. you can listen to The Howard Stern Archives. But it's a different channel on Sirius. That's got to be okay, right? Well, no, I don't think so. I think Mr. Jackson, you, and his project and other case law, I think if you, there has to be a pathway. So if I have a movie theater and I show a preview, I have the license to show all six movies in a multiplex. If I show a preview of the movie in one theater saying you can go watch this in the other theater, you're telling me that you have a right to publicity claim because I showed a preview in one of my other theaters? I'm using a clip of the copyrighted material. So I have the copyright for this movie and I can't tell anybody I have it that they should come and see it. That's what you're essentially saying. Otherwise, I'm going to have a right to publicity claim brought against me as the owner of the movie theater. Jackson said the opposite. Jackson said if you're endorsing a new product, it gave all the cases that are cited in the briefs that when you're using the persona to endorse some other product, then it's not preempted. That's what Jackson says. Where Jackson doesn't say you can't advertise your own copyrighted material. You're saying, let me see if I can sum up what you're saying. You're saying they can't advertise for the show. They can't advertise for the show, period. Otherwise, it's a right to publicity claim that can be brought. So if Spotify plays a clip of a Billy Joel song and says sign up to Spotify, we have Billy Joel songs, you would say not preempted by copyright law. Right? You can sue Spotify for letting people know they have the Billy Joel song. No, they have a license. They have a license to play Billy Joel and they have a commercial that says sign up to Spotify. Listen to Billy Joel. And you would say, no good. They're playing five seconds of the song. To advertise what for? To sign up for Spotify so you can listen to it. That would make copyright completely irrelevant then. You would have a copyright that's useless because you couldn't advertise for it. It's like being a subscriber to Spotify or to Sirius. It's like having a movie ticket. It's like purchasing the ticket for the movie. You're saying they can't advertise for you to purchase the ticket. Let's say I disagree with you. Where in your complaint would, if that's all preempted, where in your complaint do you wedge something that would not be preempted? I guess would be the question. Because all you do say in paragraph 44 is they're using it for other products and you say including I think Sirius, advertising for Sirius as a whole. So if I think that's preempted, that they're allowed to advertise for Sirius as a whole using a clip from the copyrightable material, where else in your complaint do you say something else? The places that our complaint would lead to are in the introduction on page two where we talk about that they use the persona of Senator John on their online media and on their advertisements to promote SiriusXM in general and other channels not related to the Howard Stern Show. We say the same thing on page three. We say the exact same thing on page four. We say in paragraph 34. But if my, if the view is a lot of that would be preempted, you have to wedge something more to show that you have a plausible non-preempted claim. Well, Your Honor, that would mean that the Second Circuit's position is going to be that California right of publicity is always basically preempted. No, you gave an example in your brief where it wouldn't be preempted. If they used your client's voice or stuttering in some way to say sign up to Sirius in a way that suggested your client was endorsing Sirius, that certainly wouldn't be preempted. But you don't allege that. Right. You're right, Your Honor. Because I'm alleged. I'm in the embedded complaint phase. Almost every case we've been referred to is in a sudden re-judgment or trial phase after there's been a discovery. There's almost so much my client and lawyers before they file a case catch on the air of what they're doing. We caught a few. We put them into the pleading. We think we've stated sufficient facts to get to the discovery of this case. You have to state a plausible claim before you get to discovery. Which we believe we have, Your Honor. Can I ask just a really nuts and bolts question? There's a lot of language that sort of extracts his persona using his attributes. I want to make sure I understand the tangible underlying allegation. Is there any allegation that there was a use of anything other than an actual clip as it existed, not distorted, not edited to suggest something different? Well, they mentioned his... Okay, so they mentioned his name, but they mentioned Stuttering John as a personality. So that's false. It's not just his voice replication. When you say they mentioned his name, his name is articulated in the context of a clip. Or they say, here's a clip of Stuttering John. Give me the context of the allegation. It's a little bit of both. It's upcoming. Here's a clip of Stuttering John at Moe Station, Moe Channel 101. And we'll be doing, you know, the interview that he did 10 years ago where it was a Dutch interview that he did. Pardon me. Part of it is the mentioning of his name and using the persona for a competitive advantage or for a commercial advantage. But the identity that they're using is so important here that that's the reason that they're using it to drive revenue in a way that it goes beyond what is protected by the copyright law. But no, I'm not arguing, Your Honor, that they created a poster or something else that wasn't from the show originally. He hasn't been on the show in 16 years. But they continue to seek commercial value in exploiting his persona in order to drive people back to that channel and to other channels. It's a whole subscriber-based model. Is that your question, Your Honor? Yeah. I mean, I guess the other thing and I think maybe you've answered it is that you allege that it was using these to drive people to other channels. And I'm trying to understand that. I can see how advertising, putting the clips on other channels is a way of informing people who are listening to those channels that they can be driven to the 102-101. But in what way is that advertising for the 70s music station channel? Well, if he's advertising a 70s music station in order to bring it back to the Howard Stern show, I would say that's an improper exploitation of that persona. Even though it was in a copyrightable work, the thing that I allege is not copyrighted. Right? So... But I don't currently answer your question, Your Honor. I don't currently have examples to make a discovery that would bear this out of where by advertising on the 70s, there's an uptick in commercial traffic overall. So the whole business model, you know, it's not just one channel. You get Sirius XM, of course, because you want 250 channels of who knows what. But, you know, four of them or three of them being Howard Stern show. But it's sort of all this ecosystem that works together. So I think that using it online is not just to advertise. It adheres to the benefit of the entire, you know, channel ecosystem. My sweet. I'm trying to understand how you've acknowledged that if you use the clip on the Howard Stern channel to say, hey, you can listen to this. That's probably preempted. But if you use it on another channel to say, hey, if you turn the dial, you can listen to this on the other channel. That's somehow advertising for something different. Yeah, now you're taking, you're extracting the persona of my client that's not copyrighted. So you're using it for a way that was not the original way in order to go on other channels to send it back without compensation. I don't, I think that is the right privacy on either, on the more statute in California. We've got the line I think it's been crossed. What is it? I just have a very fundamental question for me. I've been interested in your answers to the questions from my colleagues. What, what relief do you get under California law that you're not able to get if you pursue just a claim of infringement under the Copyright Act? Yeah. He doesn't have a, he doesn't have a claim of infringement under the Copyright Act because whatever the copyright or copyrightable material is that's pled, that is owned by SiriusXM or, you know, anything from that So this is it? Yeah, this, this is his, this is his ability to protect his right of privacy and to either stop the continued unauthorized use without You're seeking an injunction here, right? An injunction but not on the claim of the, of the Howard Stern Archive because that, that sort of misinterpreted thing by Judge Crown and people who were stuck. We're not trying to stop that. They can keep playing it for as long as they like. They just need to compensate by filing their right to do that for, for the uses that we're talking about. Okay. Well, I think we've got your argument well on hand and we'll hear from the other side. Thank you, Your Honor. Mr. Bagdasarian. Did I pronounce that correctly? Yes, Your Honor. Thank you. Let me please report. I'm Mark Bagdasarian on behalf of Applebee's SiriusXM. As the discussion just showed, merely advertising through clips of a Howard Stern show in which a panel appears is not a stated claim of right to publicity under California or, or, or any other law. As was pointed out here, the case law is clear on the point that merely advertising and showing his appearance based on performance on the show is not a right to publicity claim. That's a copyright claim. It is, it is, and Well, there are forms of advertising that might take it out of the subject matter of copyright. Correct? Your Honor, there, there, there could be under certain circumstances and the parties have extensive case law to this court showing the circumstances under which that scenario could play itself out. And as a, as a general category where you see that is in the context of, well, taking an attribute as a, a concept here is stuttering, which is what their allegation is of his persona. I forgot to, I forgot to mention one thing at the very beginning which, and I apologize Mr. Poppeck, when you were at the podium you can take off your mask. Okay, I'll do it at a room. Whoever's talking can take off their mask. Thank you, thank you, Your Honor. That's actually very helpful. The, the case law has been decided in this court by both parties to show the circumstances under which a white publicity claim can be made. It is doing something and even we recognize to set them apart from the performance of the copyrighted work in order to, to suggest an endorsement of a product or service. We don't have any of those allegations. So if they played a clip and said buy Howard Stern t-shirts that would be a problem that had his persona on it, right? That's, that's, that's an example of something or if they imitated his voice that would be a problem, right? If they imitated his voice. If they imitated his voice, if they did a caricature of him, if they, for example, as his opening brief says, do a subscribe to Sirius XM discovering John Washington or something like that. But their fundamental argument is that Sirius is a separate product. That if you advertise for Sirius that is a separate product using his persona. What's your response to that? We're not using his persona. The only persona that's alleged in this complaint is his... Well, suppose you had an advertisement on regular TV that says sign up to Sirius and you'll get to listen to the Howard Stern show and you played a clip from the Howard Stern show on radio or TV. Your Honor, that does not create a right publicity claim. That is what the case law that you referenced earlier says specifically. It would be illogical to not permit a copyright holder or a holder of a copyrightable work to prevent them from advertising the very thing they're allowed to do. The movie analogies are very good. It would be like performers in a movie. Tom Cruise taking his favorite actor and saying that the copyright owner or the copyrightable work cannot advertise to people and say, hey, come see Tom Cruise in a movie. In fact, there's not even an allegation in this personal medical complaint that even goes that far. What I've heard today and what I've seen in this personal medical complaint and what I saw in the briefing is just saying, hey, they advertised with this performance on the Howard Stern show. That's it. There's nothing more than that. And we know that because what we see in the briefing is what we have called in our briefing theoretical claims. Theoretical allegations where maybe they did it this way. They could have done this. They could have done that. The problem is could haves don't rise to the level of a plausible claim. May I ask you something and I understand that this is at the motion to dismiss stage and we're to review the allegations but how is his how is his voice used? How are these clips used? Are they used only for the Howard Stern show on Sirius XM or are they used in some other ways? Based on the allegations of the complaint, they're only used for the Howard Stern. They're only used for the Howard Stern. In paragraph 44 he says it's used to advertise for Sirius XM more generally. That was the one example he did in the complaint. Right? Your Honor, I respectfully submit that's not an example of anything. It doesn't tell you how, where or what it is. My question you don't have to answer any of these questions. No, I understand. But my question is how in fact are they used? I mean I understand  but are they used beyond the Howard's for purposes of advertising beyond the Howard Stern show or beyond Sirius XM? I don't see how. Your Honor, the only way I can answer that question as far as I know I don't even know that they advertise with clips that include the appendix. To the extent that they are advertised because I do know Sirius XM where I've represented them for a long time they advertise what's on their channels so people are made aware of the content and things that they have on their channels. And that includes obviously Howard Stern who's currently on two of the channels. So you're not even sure that they advertise generally for Sirius outside of actual people who are listening to Sirius? That they advertise more generally using the clips? You're not even aware whether that's... I'm not aware that they're even doing that Your Honor and I'm not and quite frankly based on the allegations to complain I'm not even sure that they're aware. He's been off the show he's probably been off the show for 15 or 16 years. Throughout that entire period of time including today whatever's being broadcast on Sirius XM can be heard by anyone. It's very easy to do that and he can't come up with one example to explain how it's being used in a way that would violate or potentially violate a right of publicity under California law. Tell me for example that we did such stuttering John says you know you should subscribe to Sirius XM that said properly could give you a right of publicity claim. He can't do that? He can't do an imitation he can't claim some sort of voiceover some characters or something like that. There's nothing setting him apart from his appearance on the show that he has alleged in the first night of the claim or anywhere in order to be able to make that point. With that Your Honor if you have any further questions I'm happy to answer them otherwise I'll give you the balance of my time. Thank you very much. Thank you Anderson. Alright Mr. Popek this is your time without a mask. Thank you Your Honor I appreciate that. I'll take advantage of it. I'll make this brief. While I appreciate Your Honor's asking questions outside the record about how is Mr. Melendez's persona being exploited or used inside the channel or outside the channel they Sirius XM has the records the databases the archive records that they're advertising we do not. And so we have made sufficient allegations we don't have a heightened plea standard under rule 9B or any other heightened plea standard. I just I just want to make totally sure that I understand I just want to make sure what was inside Oh no no no no I asked I asked a question that was designed to find out what was outside of the record. And for us we think the allegations are sufficient to lead to the discovery to get past the Of course Of course That's why you're here. But these If these Hold on If these allegations are sufficient doesn't that mean everybody is going to have to go to summary judgment all you have to say is they're using my persona outside the copyrighted material period. And you're saying that's sufficiently played to get you to summary judgment isn't that what you're suggesting? No I'm suggesting that we signed a plea date under rule 11 and that we are we have sufficient basis to allege what we've alleged I don't have to allege more I don't have to put in more evidence All you have to allege is they're using my persona in a way that's unrelated to the copyrightable work. That's enough. That what is being used is not either able to be copyrighted or is outside the copyrighted story. This is able to be copyrighted right? Obviously Well not his So this is my that is my fundamental question because I'm quite confused. Are these not are these recordings not copyrighted? They're either copyrighted or copyrighted. So and they're rebroadcasting these copyrighted clips correct? And they're permitted to do it as I understand it I'm trying to figure out what the line is that you are asking us to draw they're permitted to do it with respect to advertisements for the Howard Stern show. Yes or no? They are as long as they don't go too far. You can't extract. No. No. So stop. Stop please. Just give me one second then because then my confusion grows. So when you say that there's a so there's a line even with respect to the company's ability to use copyright its own copyrighted work in connection with the very show that your client was on. Is that what you're saying? Well I haven't alleged it here but I can see What is that line? Sorry? What is the line? Tell me and tell me what the case law is that supports your view. I would refer us back to Jackson. Where in Jackson does Judge Leval say anything that supports that view? Well I'll take it where he believes the analysis begins and ends and I think applies here. It says in our view the pertinent this is on page 41 of Judge Leval's decision in our view the pertinent distinction for such analysis is whether on the one hand the defendant's use of the work involves the plaintiff's likeness seeks advantage for the defendant on the basis of the plaintiff's identity. That's what we've alleged. That's where the plaintiff is identified in a manner that applies to the plaintiff's endorsement sponsorship or approval or in some cases the plaintiff's disapproval or rejection of the defendant or its products or holds opinions favored or disfavored by the defendant. The value of what the defendant distributes lies in its reference to the identity of the plaintiff shown. What might be called identity emphasis. So if there's identity emphasis which we've alleged we can leave that process alone. Judge Leval said courts find these claims preempted if it's based upon if they conclude the invocation of the publicity right was a pretextual justification for an effort to prevent or otherwise control the reproduction or dissemination of a copyrighted work. That's what he said. Essentially that's what you're arguing to us that you should be able to control their dissemination of the clips which is a copyrightable work. The clips are a copyrightable work and we're saying we should be able to control that. Isn't that what you're saying to us? No. They can continue to play them. You just told me they can't play it on any other channel. They can't. All they can do is play it on the Howard Stern channel. Just play the whole thing. They can't advertise with the clip. They can't use my client's identity and his celebrity to drive traffic or to gain a commercial advantage. That's including the copyrightable work itself. They can't use the copyrightable work itself. They can't extract from the copyrightable work that which is not copyrightable which is my client's persona. What do you mean when you say I don't understand what it means to extract that from the work. There's a clip and it's copyrightable work. What is the act of extraction that you're describing? They can't say the Stutterer and John clip. They can't use the Stutterer and John clip to advertise somewhere else to drive traffic back. To see the show that is copyrightable? Right. To use his voice which can't be copyrighted even though it's in a copyrightable work. There's tons of cases that have been cited in which the thing that is embedded in the copyrightable work may not itself be subject to copyright. Every case goes the other way on this. Jules Jordan Video says you can put it on a DVD. That's preempted. Ravy versus ESPN. ESPN rebroadcasts these wrestling matches. Preempted. If they're taking a portion of a recording that they have a copyright to and putting it in another song then the Ninth Circuit said it was okay. Every single case. You're citing Jackson. Would you describe for me and maybe I think we've got your argument but would you describe for me how we are to dissect or differentiate between the work the reproduction or dissemination of the work of the work itself and the persona. How do we How do we Yeah. You're asking us you're saying that so long as his persona is captured in the work I think then that that becomes a problem. You can extract from the copyrightable work Stutterer and John as a persona and use them as an advertising show for what you're selling. What is it what is it that Sirius XM should do? They shouldn't use John Melendez unless they pay for it. At all? Unless they pay for it. At all? Okay. That's that's your bottom line and I appreciate that candor. Well thank you very much. Thank you very much. Appreciate the argument. You can put back your mask Mr. Popper. Yes sir. And we'll reserve decision.